LYONS, Justice
(concurring specially).
Under § 5 of the Voting Rights Act of 1965 (42 U.S.C. § 1973c), a few states, including Alabama, are prevented from enforcing changes affecting voting practices without first obtaining approval from the Federal government. I believe that Justice Black was right when he dissented from the United States Supreme Court’s upholding the validity of § 5 against constitutional attack in South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). Justice Black, in his dissent, made the following observations:
“My second and more basic objection to § 5 is that Congress has here exercised its power under § 2 of the Fifteenth Amendment through the adoption of means that conflict with the most basic principles of the Constitution.... Section 5, by providing that some of the States cannot pass state laws or adopt state constitutional amendments without first being compelled to beg federal authorities to approve their policies, so distorts our constitutional structure of government as to render any distinction drawn in the Constitution between state and federal power almost meaningless .... Moreover, it seems to me that § 5 which gives federal officials power to veto state laws they do not like is in direct conflict with the clear command of our Constitution that ‘The United States shall guarantee to every State in this Union a Republican Form of Government.’ I cannot help but believe that the inevitable effect of any such law which forces any one of the States to entreat federal authorities in far-away places for approval of local laws before they can become effective is to create the impression that the State or States treated in this way are little more than conquered provinces.... A federal law which assumes the power to compel the States to submit in advance any proposed legislation they have for approval by federal agents approaches dangerously near to wiping the States out as useful and effective units in the government of our country. I cannot agree to any constitutional interpretation that leads inevitably to such a result.
“I see no reason to read into the Constitution meanings it did not have when it was adopted and which have not been put into it since. The proceedings of the original Constitutional Convention show beyond all doubt that the power to veto or negative state laws was denied Congress. On several occasions proposals were submitted to the convention to grant this power to Congress. These proposals were debated extensively and on every occasion when submitted for vote they were overwhelmingly rejected. The refusal to give Congress this extraordinary power to veto state laws was based on the belief that if such power resided in Congress the States would be helpless to function as effective governments. Since that time neither the Fifteenth Amendment nor any other Amendment to the Constitution has given the slightest indication of a purpose to grant Congress the power to veto state laws either by itself or its agents. Nor does any provision in the Constitution endow the federal courts with power to participate with state legislative bodies in determining what state policies shall be enacted into law. The judicial power to invalidate a law in a case or controversy after the law has become effective is a long way from the power to prevent a State from passing a law. I cannot agree with the Court that Congress — denied a power in itself to veto a state law — can delegate this same power to the Attorney General or the District *961 Court for the District of Columbia. For the effect on the States is the same in both cases — ’they cannot pass their laws without sending their agents to the City of Washington to plead to federal officials for their advance approval.”
Id. at 358-61, 86 S.Ct. 803 (footnote omitted).
As the majority points out, the United States Supreme Court has interpreted § 5’s proscription against changes in state law without advance federal approval to bar a state court from ordering relief that would otherwise require preclearance if such action were taken by any other branch of state government. Hathorn v. Lovorn, 457 U.S. 255, 269-70, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). Under Hat-hom, the approved practice requires submission of the claim for relief to the Attorney General before application is made to the court. The Court observed:
“Our holding does not prevent state courts from attempting to accommodate both state and federal interests. A state court, for example, might adopt the approach followed by the Chancery Court in this case, and order the parties to submit the proposed relief to the Attorney General. If the Attorney General registers an objection, the court might then order the parties to seek a declaratory judgment from the District Court for the District of Columbia.”
Id. at 270 n. 24, 102 S.Ct. 2421 (emphasis added).
On the record before us, there is no indication that the request for a court-ordered stay of the election has received federal approval pursuant to § 5.
While I share the angst expressed in Justice Houston’s dissenting opinion, criticism of the result in this case should, I respectfully submit, be directed to Congress.
HARWOOD, J., concurs.